**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **DION L. WEEKS** | § | |
| | § | |
| **v.** | § | **A-10-CA-739-SS** |
| | § | |
| **RICK THALER, Director, Texas Dept.** | § | |
| **of Criminal Justice–Correctional** | § | |
| **Institutions Division** | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

TO:  THE HONORABLE SAM SPARKS
     UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Petitioner Dion L. Weeks's Petition for a Writ of Habeas Corpus (Document 1) and Answer with Brief in Support of Respondent, Rick Thaler, Director of the Texas Department of Criminal Justice, Correctional Institutions Division (Document 11). Weeks did not file a reply. Proceeding pro se, Weeks has been granted leave to proceed in forma pauperis. *See* Order (Nov. 08, 2010) (granting IFP status) (Document 6). For the reasons set forth below, the undersigned finds that Weeks's application for writ of habeas corpus should be denied.

### STATEMENT OF THE CASE

**I.    PROCEDURAL HISTORY**

Weeks challenges the Director's custody of him pursuant to a judgment and sentence of the 22nd Judicial District Court of Hays County, Texas, in Cause Number CR-07-122, styled *State of*

*Texas v. Dion Lamichea Weeks*.  *See Ex parte Weeks*, Application No. 74,679, at 2 (judgment and sentence for possession of a controlled substance).[1]  Weeks was charged with possession of a controlled substance with intent to deliver, as well as the lesser included offense of possession of a controlled substance.  2 C.R. at 108-12 (charging Weeks with possession with intent to deliver in an amount greater than four grams but less than 200 grams, and possession in an amount greater than four grams but less than 200 grams).  He pleaded not guilty.  On April 28, 2008, a jury acquitted Weeks of the possession-with-intent-to-distribute charge, but found him guilty of the lesser included possession offense and sentenced him to 20 years of confinement.  *Id.* at 134.

Weeks's conviction was affirmed on appeal by the Third Court of Appeals of Texas, and he did not petition the Texas Court of Criminal Appeals for discretionary review.  *Weeks v. State*, No. 03-08-00359-CR, 2009 WL 1896066 (Tex. App.–Austin July 1, 2009, no pet.).  Weeks filed a state application for writ of habeas corpus, which was denied without written order on October 27, 2010.  *Ex parte Weeks*, Application No. 74,679, at cover.

## II.  FACTUAL BACKGROUND

The court of appeals summarized the evidence presented as follows:

On December 14, 2006, Sergeant Wade Parham of the San Marcos Police Department stopped a vehicle driven by Weeks for traffic violations.  Parham activated his patrol car camera as Weeks was pulling over.  The audio and video recording, with some redactions, was played to the jury at trial and made a part of the record, and reflects the following sequence of events.

Parham approached Weeks's car and informed Weeks that he was being stopped because he had been speeding.  Weeks responded by explaining that he had been trying to pass another vehicle in order to make a right-hand turn.  Weeks also

---

[1]  Citations to pleadings and documents in the state-court habeas record appear as *Ex parte Weeks*, Application No. 74,679, followed by a page number.  [#] C.R. at [#] indicates a reference to a particular volume of the Clerk's Record in the trial court.  [#] R.R. at [#] indicates citation to a particular volume of the Reporter's Record.

volunteered that the car he was driving belonged to his girlfriend. Parham obtained Weeks's driver's license and informed Weeks that he would check the license and, "if everything's in order," issue him a warning. Parham returned to his patrol car, where he is heard communicating with dispatch and ascertaining that Weeks had outstanding arrest warrants related to unpaid traffic tickets. Parham then returned to Weeks's car, informed Weeks that he had outstanding warrants from San Marcos for speeding and failure to appear, and placed him under arrest. As Parham was preparing to place him in handcuffs, Weeks requested to call "my friend" on his cell phone to make arrangements to pick up the car. Weeks reiterated that the car belonged to his girlfriend, adding that she needed the car to get to work by midnight that evening. Parham agreed that these arrangements would be preferable to having the car towed, and permitted Weeks to make his call. Weeks is heard informing an unidentified person that he needed to come get the car because Weeks was being picked up on outstanding warrants, requesting that he take it to his house until "Tia" could pick it up, and giving directions to his location. Weeks was then permitted to make a second call, to "Tia"–later identified as his then-girlfriend, Tia Mahan–informing her that he was going to jail and that "Micah" would have her car at his house. After Weeks completed this call, Parham placed him in handcuffs.

Parham then began conducting a search of Weeks's person incident to arrest. Parham asked Weeks whether he had any weapons or "anything illegal" on his person, to which Weeks responded, "Not that I know of" and "I don't believe so." Parham inquired whether someone could have left something on Weeks's person without him knowing it. Weeks then represented that the jeans he was wearing did not belong to him. Shortly thereafter, Parham found a small item in Weeks's pocket that caused Weeks to exclaim, "Oh, sh*t!" It is undisputed that this item was a small baggie containing what proved to be .37 grams of cocaine.

Parham then placed Weeks in the back of his patrol car. Shortly thereafter, a man approached who was later identified as Micah Franks, the friend whom Weeks had called earlier to pick up the car. For several minutes, the recording shows images of a backup officer searching the car while Franks stood in the street nearby. The recording is accompanied by audio of both the officers speaking to one another outside the car and a cell phone call, on speaker phone, that Weeks somehow made to Ms. Mahan while handcuffed in the back seat of Parham's patrol car. Weeks is heard informing Mahan that the officers had found cocaine on him, begging Mahan (who is obviously displeased) not to "give up" on him, and urging her to help him make bail. Weeks further stated that "they're going to charge me with everything" and that he would go to jail for a long time "if they catch me." Later, as the search proceeds, Weeks observed that the officers were about to go through "my bag," then "they're getting ready to find the rest of the dope," and, as the officers react to the discovery, "they found the drugs." Weeks later states, "I'll just tell them that I'm a drug user."

It is undisputed that the search uncovered a green satchel bag containing a white plastic bag, which, in turn, contained narcotics paraphernalia, hundreds of small Ziploc baggies, and a cloth Crown Royal bag containing what proved to be a total of 6.39 grams of cocaine divided and packaged among eleven small Ziploc baggies. Parham later testified without objection that the Ziploc baggies were a type "commonly used for packaging drugs" and that the cocaine found in the Crown Royal bag was "all broken up for sale." Also found in the car was a set of digital scales, which Parham testified were commonly used for weighing drugs, and a marihuana pipe.

After finding the drugs, Parham decided to impound the car, and sent Franks on his way. Parham then read Weeks his *Miranda* rights. Thereafter, with little or no prompting from Parham, Weeks made numerous self-incriminating admissions to Parham, on tape, as the pair prepared to depart the scene and during their drive to the jail. Weeks divulged that, among other things, the Crown Royal bag contained about seven grams of cocaine, that he had just "picked up" two "eight-balls" of cocaine,[2] that this amount would last him about a month, and that he was "wired" and "high" from having ingested some of the cocaine earlier that evening. Weeks portrayed himself as a cocaine addict who had developed the habit during a "struggling" period of his life.

> FN2. An "eight-ball" of cocaine, Parham later testified, refers to one-eighth of an ounce of cocaine, which is approximately 3.5 grams; thus, two eight-balls would equal roughly 7 grams.

Weeks was indicted for possession of a controlled substance, cocaine, with intent to deliver in an amount greater than four grams but less than 200 grams, with an enhancement paragraph alleging that he had previously been convicted of the felony offense of robbery. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.102(3)(D) (West Supp. 2008), § 481.112(d) (West 2003); TEX. PENAL CODE ANN. § 12.42 (West Supp. 2008). The central issue at trial concerned the inferences to be drawn from the patrol car videotape and evidence seized from the car. The State argued that the evidence established Weeks had been dealing the cocaine. Weeks, in contrast, sought to portray himself as merely a small-time user, not a dealer, who had spiraled downward into cocaine dependency following his father's death. Weeks also claimed that he had purchased less than one gram of cocaine that evening for his personal use, and that the larger quantity of cocaine found in the Crown Royal bag had actually belonged to Micah Franks, the friend who had come to pick up Tia Mahan's car following Weeks's arrest.

Weeks testified that he had purchased a single baggie of cocaine from Franks in a transaction taking place in the front seat of Mahan's car. According to Weeks, Franks departed the car suddenly and, unbeknownst to Weeks at the time, left behind

a white plastic bag containing the Crown Royal bag and larger quantity of cocaine. Weeks testified that he used some of the cocaine from the baggie he had purchased, leaving the .37 grams later found in his pocket. While at a San Marcos bar, Weeks claimed that he received a series of insistent and threatening calls from Franks indicating that Franks had left some belongings in the car and demanding that Weeks return them. It was while driving the car to meet Franks and return his belongings that, Weeks claims, he was pulled over by Parham. Weeks claimed that he thereafter took responsibility for the drugs out of fear of the consequences if he snitched on Franks.

During his testimony, Weeks acknowledged that both the digital scales and marihuana pipe found in the car had belonged to him. He also admitted that he had known about the cocaine while driving the car to meet Franks. Weeks testified that after speaking with Franks, he went to the car and found the cocaine. Earlier, Weeks revealed, he had viewed the contents of the Crown Royal bag and weighed various of the baggies of cocaine before making his purchase. Weeks further admitted that the green satchel bag in which the cocaine was found belonged to him, and that he had attempted to conceal Franks's white plastic bag inside it.

The district court submitted the charged offense and the lesser-included offense of possession of cocaine in an amount greater than four grams but less than 200 grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(d) (West 2003). The jury acquitted Weeks of the possession-with-intent-to-distribute charge but convicted him of the lesser-included possession charge. During punishment phase, Weeks pled true to the allegation in the enhancement paragraph of his indictment that he had previously been convicted of robbery, and a certified copy of his judgment of conviction, from 1999, was admitted into evidence. It reflects that Weeks had pled guilty to the offense and been sentenced to six years in the TDCJ. The State also presented evidence of a 1998 misdemeanor theft conviction and two 1995 judgments imposing deferred adjudication for unauthorized use of a motor vehicle. The State also introduced evidence that, while out on bail in the present cause, Weeks had failed to appear in court and had also been charged with assault/family violence. The alleged victim, a former live-in girlfriend whom Weeks had met in 2007, testified that Weeks beat and choked her, then threatened her if she reported the assault to police. She also claimed that Weeks had used cocaine and smoked marihuana. Additionally, a San Marcos police officer testified that he had arrested Weeks for marihuana possession in 2007, when, during a traffic stop, Weeks volunteered that he had a bag of marihuana.

The jury was instructed that it should assess punishment at imprisonment for any term not more than 99 years or less than five years. *See id.*; TEX. PENAL CODE ANN. §§ 12.32, .33 (West 2003), .42(b). The jury assessed punishment at twenty years' imprisonment.

*Weeks*, 2009 WL 1896066, at *1-4.

### III.   WEEKS'S GROUNDS FOR RELIEF

Weeks raises the following grounds for relief:

1.   The trial court denied Weeks's due process rights by refusing to hear the testimony of defense witnesses Sylvia Quintero and Maria Collins.  Pet. at 7 & Attach. at 1-3, 5-6 (Claims 1, 6(c), 7).[2]

2.   The evidence supporting Weeks's conviction was obtained in violation of Weeks's right against illegal search and seizure because the arresting officer based his search on an invalid warrant.  Pet. at 7 & Attach. at 3, 5-6 (Claims 2, 6(b)).[3]

3.   The arrest warrant that initiated Weeks's detention violated his due process rights pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674 (1978).  Pet. at 7 & Attach. at 4 (Claim 3).

4.   Weeks's due process rights were violated by the trial judge's bias when the judge told defense counsel that he would reject the *Franks* motion prior to the presentation of argument and evidence.  Pet. at 8 & Attach. 5-6 (Claims 4, 6(a)).

5.   The trial court deprived Weeks of his state-created liberty interest under article 38.23 of the Texas Code of Criminal Procedure without due process by admitting evidence obtained in violation of the U.S. Constitution.  Pet. Attach. at 5 (Claim 5).

6.   Weeks was denied effective assistance of counsel at trial because:

    a.   his attorney did not resubmit the *Franks* motion after the motion was denied by a recused judge, *id.* at 6-9 (Claims 8(a), 9(b));

---

[2]  The claim numbers correspond to the numbering of the claims in the petition.  *See* Pet. at 7-8 & Attach. at 1-11.  Citations to "Attach. at [#]" refer to the "continuation sheets" attached to Weeks's petition.

[3]  Because Weeks presents a few duplicative claims, for example, restatements of some of his constitutional claims as separate Fourteenth Amendment claims, *see, e.g.,* Pet. at 7-8 & Attach. at 1-7 (restating the claims presented in Claims 1-4 as Claims 6-7), the Court has consolidated certain claims for purposes of discussion and resolution.

b.      his attorney did not challenge the constitutionality of the scope of the search incident to his arrest, *id.* at 6, 8 (Claim 8(b));

c.      his attorney did not request jury instructions regarding the legality of the municipal arrest warrant or whether the vehicle search exceeded the scope of a search incident to arrest, *id.* at 6, 8 (Claim 8(c));

d.      his attorney used a strategy that essentially presented Weeks as a drug addict and admitted possession of a controlled substance, *id.* at 6-9 (Claims 8(d), 9(a));

e.      his attorney was ignorant of applicable law, which resulted in the introduction of prejudicial evidence relating to Weeks's character, *id.* at 6-7 (Claim 8(e)); and

f.      state action in the form of the trial court's predetermination of the merits of the *Franks* motion prevented trial counsel from succeeding on the *Franks* motion; state action in the form of the trial court prevented defense counsel from presenting witnesses Quintero and Collins; and state action permitted trial counsel a law license and to represent Weeks despite trial counsel's ignorance of the law, *id.* at 9-10 (Claim 10).

7.      Weeks was denied effective assistance of counsel on appeal because:

a.      his counsel did not argue the claims listed above, *id.* at 10-11 (Claim 11);

b.      state action deprived his appellate counsel of the transcript of his *Franks* hearing by not making it a part of the appellate record, thereby preventing his appellate counsel from investigating and advancing issues on appeal related to the *Franks* hearing, *id.* at 11-12 (Claim 12).

IV.     **STATUTE OF LIMITATIONS AND EXHAUSTION OF STATE REMEDIES**

The Director does not contend that Weeks's petition is barred by limitations under 28 U.S.C. § 2244(d), or subject to exhaustion under 28 U.S.C. § 2254(b). Answer at 9-10. A review of the state-court records submitted by the Director confirms that Weeks properly raised his claims in prior state-court proceedings.

**DISCUSSION AND ANALYSIS**

**I.     REVIEW UNDER THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996**

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is defined by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  By its terms, § 2254(d) bars relief on any claim "adjudicated on the merits" in state court, subject only to the exceptions in § 2254(d)(1) and (d)(2).  *See, e.g., Harrington v. Richter*, – U.S. –, 131 S. Ct. 770, 780-81 (2011).  Federal habeas relief may not be granted for claims subject to § 2254(d) unless the state habeas court's decision "was contrary to" federal law then clearly established by holdings of the Supreme Court, 28 U.S.C. § 2254(d)(1); *(Terry) Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000), "involved an unreasonable application of" such law, 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts" in light of the record before the state court, 28 U.S.C. § 2254(d)(2).

In *Williams*, the Supreme Court explained the "contrary to" and "unreasonable application" provisions of § 2254(d)(1):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 412-13, 120 S. Ct. at 1523. Section 2254(d)(2) likewise commands deference to the state habeas court's factual determinations by precluding relief on any claim that was adjudicated on the merits in state-court proceedings unless the state-court decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(2). Moreover, such determinations are presumed to be correct, although a petitioner can rebut this presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning. *See, e.g., Harrington*, 131 S. Ct. at 780-81. Under § 2254(d)*, a state court need not cite or even be aware of Supreme Court decisions. *Id.* (citing *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (*per curiam*)). When a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden is met by showing that there was no reasonable basis for the state court to deny relief. *Id.* This is so whether or not the state court indicates which of the elements in a multi-part claim it found insufficient; as the Supreme Court explained, § 2254(d) applies when a "claim," not a component of one, has been adjudicated. *Id.*

With these principles in mind, the Court turns to the issues raised by the pleadings in this case.

## II.    WEEKS'S GROUNDS FOR RELIEF

Having independently reviewed the entire state-court record and Weeks's asserted claims, the Court finds nothing unreasonable or contrary in the state court's application of clearly established federal law or determination of facts in light of the evidence, as discussed below.

### A.    Preclusion of Witnesses Regarding Validity of Municipal Warrant (Claims 1, 6(c), 7)

Weeks contends that his due process rights were violated by the trial court's denial of testimony by two municipal court clerk's employees, Maria Collins and Sylvia Quintero, as irrelevant.  Pet. at 7 & Attach. at 1-3, 5-6.  Weeks argues that the blocked testimony would have supported his claim that the key evidence was obtained from an illegal search and seizure because the underlying municipal warrant was invalid.  *Id.*  The Director counters that the right to call witnesses is not absolute and a court may properly preclude witness testimony that is cumulative, irrelevant, or immaterial.  Answer at 12-13.  The Director argues that the municipal clerk witness testimony was irrelevant because the legality of the warrant had already been litigated in a pretrial hearing and the matters at issue were Weeks's guilt or innocence of possession and possession with intent to distribute; moreover, the trial court did hear Quintero's testimony at the end of trial in relation to a motion for new trial.  *Id.* at 13-14.

The Sixth Amendment right to call witnesses is not absolute.  *See, e.g., Roussell v. Jeane*, 842 F.2d 1512, 1516 (5th Cir. 1988).  The trial court may preclude the defense from calling witnesses who will offer cumulative, irrelevant, or immaterial testimony.  *Id*.  In this case, a municipal warrant led to the arrest and discovery of cocaine on Weeks's person and in his vehicle.

*Weeks*, 2009 WL 1896066, at *1. At trial, Weeks's attorney attempted to present Quintero and Collins, employees of the municipal court that issued the warrant for Weeks's arrest, to testify about the validity of the warrant that led to the search of Weeks's person and vehicle. 5 R.R. at 148-52. But these witnesses were not relevant to the elements of the offenses of possession of a controlled substance or possession with the intent to deliver a controlled substance, which were the issues before the jury.[4] As a result, disallowing the two witnesses did not offend Weeks's Sixth Amendment right.[5]

The state habeas court's denial of this claim was not an unreasonable or contrary application of clearly established federal law. Accordingly, this claim should be denied. *See* 28 U.S.C. § 2254(d).

### B. Fourth Amendment Claims (Claims 2, 3, 6(b))

Weeks contends that the evidence supporting his conviction was obtained in violation of his Fourth Amendment right against illegal search and seizure because the arresting officer based his search on an invalid warrant. Pet. at 7 & Attach. at 3-6 (Claims 2, 6(b)). Weeks argues via a

---

[4] The witnesses in question were also irrelevant because the issue they were associated with had already been addressed. The legality of the warrant was litigated in a pretrial *Franks* hearing during which the trial court heard testimony from Collins and a defense investigator about the validity of the municipal warrant. *See* 2 R.R. at 7-44. The trial court also later heard Quintero's testimony in relation to a motion to dismiss at the end of the trial and denied the motion. 5 R.R. at 200-15.

[5] In the absence of constitutional error, the question of possible resulting prejudice need not be examined. *See Roussell*, 842 F.2d at 1521-22; *see also Fry v. Pliler,* 551 U.S. 112, 121-22, 127 S. Ct. 2321, 2328 (2007) (holding that the prejudice of a constitutional error in a state-court criminal trial is measured by the "substantial and injurious effect" standard of *Brecht v. Abrahamson*, 507 U.S. 619, 113 S. Ct. 1710 (1993)). In any event, because the testimony sought was not relevant, it was not crucial evidence and its exclusion, even if erroneous, was only harmless error. *See Brecht*, 507 U.S. at 637, 113 S. Ct. at 1722.

separate, but related, claim that the arrest warrant that initiated his detention violated his due process

rights pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674 (1978), because the municipal

court clerk who was the affiant on the probable cause warrant made false statements in her affidavit.

Pet. at 7 & Attach. at 4 (Claim 3). The Director argues that Weeks may not seek habeas relief based

on Fourth Amendment claims. Answer at 14-15.

When a state has provided an opportunity for full and fair litigation of a Fourth Amendment

claim, a state prisoner may not be granted federal habeas corpus relief. *Stone v. Powell*, 428 U.S.

465, 494, 96 S. Ct. 3037, 3051 (1976); *see also ShisInday v. Quarterman*, 511 F.3d 514, 524 (5th

Cir. 2007) ("*Stone* bars habeas review of Fourth Amendment claims when the state has provided an

opportunity for full and fair litigation of the claim."). An "opportunity for full and fair litigation"

is understood as simply "an opportunity," whether or not the defendant takes advantage of that

opportunity. *Janecka v. Cockrell*, 301 F.3d 316, 320-21 (5th Cir. 2002) (citation and quotation

omitted). "If a state provides the processes whereby a defendant can obtain full and fair litigation

of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim

whether or not the defendant employs those processes." *Id.* (citation and quotation omitted).

In this case, Weeks did challenge at trial the evidence obtained as a result of his

arrest. Weeks's attorney submitted a *Franks* motion, challenging the sufficiency of the probable

cause affidavit supporting the municipal warrant for Weeks's arrest. 2 R.R. at 7-42. The trial court

held a *Franks* hearing, heard witness testimony on the issue, and denied the motion. *Id.* In addition,

during the trial, the court heard Weeks's motion to suppress based on a challenge to the traffic stop,

3 R.R. at 205-51, as well as a motion for new trial premised on the invalidity of the original municipal arrest warrant, 5 R.R. at 200-15.

Weeks was afforded opportunity for review of his Fourth Amendment claims. *See, e.g., ShisInday*, 511 F.3d at 525. Moreover, Weeks does not contend that he lacked an adequate opportunity to press his Fourth Amendment challenges. Under *Stone,* these Fourth Amendment claims are barred from federal habeas review.

### C.      Judicial Bias (Claims 4, 6(a))

Weeks asserts that his due process rights were violated by bias on the part of the trial judge who presided over pretrial matters, as exhibited when the judge allegedly told defense counsel he would reject the *Franks* motion prior to the presentation of argument and evidence. Pet. at 8 & Attach. at 5-6. In response, the Director argues that Weeks's claim offers mere disagreement with the *Franks* ruling and is conclusory, and thus the state habeas court rightly rejected this claim as failing to meet the difficult standard for showing judicial bias. Answer at 16-17.

Under the Due Process Clause, a criminal defendant is guaranteed the right to a fair and impartial tribunal. *Bracy v. Gramley*, 520 U.S. 899, 904-05, 117 S. Ct. 1793, 1797 (1997). The Due Process Clause requires a fair trial "before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Id.* (citation omitted). "'[B]ias by an adjudicator is not lightly established.'" *Richardson v. Quarterman*, 537 F.3d 466, 474 (5th Cir. 2008) (quoting *Valley v. Rapides Parish School Bd.*, 118 F.3d 1047, 1052 (5th Cir. 1997)). Indeed, courts ordinarily presume that public officials have properly discharged their official duties, and general allegations of bias or prejudice are insufficient to establish a constitutional violation. *Id.*

Weeks premises his judicial bias claim on comments by the trial judge on the merits of the *Franks* motion prior to the *Franks* hearing, yet he offers no specific record citation for such comments or the particular statements alleged to have been made. Indeed, the Court was unable to locate in the record any particular statements by the trial judge prior to the *Franks* argument that Weeks could be referencing. *See* 2 R.R. at 4-9.

In any event, even assuming that the trial judge did express a view of the merits of the *Franks* motion prior to holding a hearing on the motion, and then ruled adversely on the motion, such does not establish judicial bias. *See Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994) (conclusory allegations premised on adverse rulings are not sufficient to support a finding of bias); *Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008) (reviewing prerequisites for demonstrating judicial bias). Under the highly deferential standard mandated by AEDPA, the Court cannot conclude that the state habeas court's rejection of this judicial bias claim was an unreasonable or a contrary application of controlling Supreme Court precedent, nor did it involve an unreasonable determination of the facts in light of the evidence presented. Accordingly, habeas relief is barred in this Court. *See* 28 U.S.C. § 2254(d).

### D.    Article 38.23 of the Texas Code of Criminal Procedure (Claim 5)

Weeks contends that the trial court deprived him of his state-created liberty interest under article 38.23 of the Texas Code of Criminal Procedure without due process by admitting evidence obtained in violation of the U.S. Constitution. Pet. Attach. at 5. The Director counters that article 38.23 is strictly a matter of state law that does not provide a cognizable basis for federal

habeas relief unless it involves a denial of fundamental fairness, and notes that federal courts defer to the state courts on matters of state-law interpretation. Answer at 17-18.

This claim is not cognizable on federal habeas review. It is not the role of a federal habeas court to review the state courts' interpretation of the State's own rules. *See, e.g., Charles v. Thaler*, 629 F.3d 494, 500 (5th Cir. 2011). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991). Weeks's complaint concerns state criminal procedure and "'does not involve such a denial of fundamental fairness as to fall within the purview of federal habeas corpus.'" *Ables v. Scott*, 73 F.3d 591, 592 (5th Cir. 1996) (quoting *Johnson v. Beto*, 383 F.2d 197 (5th Cir. 1967)). Weeks fails to show, or even suggest, how the trial court's application of article 38.23 rendered his trial fundamentally unfair or ran afoul of any specific constitutional right.

The state court's determination of this habeas claim was not contrary to or an unreasonable application of clearly established federal law nor was it based on an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d). Weeks is not entitled to habeas relief on this ground

### E.    Ineffective Assistance of Trial Counsel (Claims 8(a)-(f), 9, 10)

Weeks asserts a variety of claims of ineffective assistance by trial counsel. Weeks contends that he was denied effective assistance of counsel at trial because: (1) his attorney argued the *Franks* motion when the trial judge allegedly already expressed a view of the merits of the motion and trial counsel did not resubmit the motion after it was denied by a recused judge, Pet. Attach. at 6-9 (Claims

8(a), 9(b)); (2) his attorney did not challenge the constitutionality of the scope of the search incident to his arrest, *id.* at 6, 8 (Claim 8(b)); (3) his attorney did not request jury instructions regarding the validity of the municipal arrest warrant or whether the vehicle search exceeded the scope of a search incident to arrest, *id.* (Claim 8(c)); (4) his attorney used a strategy that essentially presented Weeks as a drug addict and admitted possession of a controlled substance, *id.* at 6-9 (Claims 8(d), 9(a)); (5) his attorney was ignorant of applicable law, which resulted in the introduction of prejudicial evidence relating to Weeks's character, *id.* at 6-7 (Claim 8(e)); and (6) state action in the form of the trial court's predetermination of the merits of the *Franks* motion prevented trial counsel from succeeding on the *Franks* motion; state action in the form of the trial court prevented defense counsel from presenting witnesses Quintero and Collins; and state action permitted trial counsel a law license and to represent Weeks despite trial counsel's ignorance of the law (Claim 10), *id.* at 9-10.

The Director counters each claim as follows: (1) resubmission of the *Franks* motion was not appropriate under professional norms and did not constitute a deficiency under *Strickland*, Answer at 20-21; (2) not challenging the constitutionality of the vehicle search as exceeding the scope of a permissible search incident to arrest did not represent a deficiency or prejudice because there was no reasonable probability that the Fourth Amendment claim would have been successful and the verdict would have been different absent the evidence at issue, particularly in light of the state of the law at the time of trial, *id.* at 21-24; (3) not requesting jury instructions regarding the legality of the arrest warrant or whether the vehicle search exceeded the scope of a search incident to arrest did not represent professional error on the part of counsel since neither issue was ever presented to the jury, *id.* at 24-25; (4) trial counsel's strategy that essentially presented Weeks as a drug addict and admitted

possession of a controlled substance was a reasonable trial strategy given the overwhelming evidence that Weeks was in possession of cocaine and the fact that counsel succeeded in obtaining an acquittal on the more serious delivery offense despite Weeks's possession of scales and numerous plastic bags associated with dealing drugs, *id.* at 25-26; (5) Weeks offers only a conclusory assertion that his trial counsel was ignorant of applicable law, and fails to offer any specific support of deficiency or prejudice, *id.* at 26-27; and (6) legal authority does not support Weeks's argument that adverse trial court rulings or the licensing of an attorney can cause trial counsel to be deficient under the law of *Strickland*, *id.* at 27-28.

Ineffective assistance of counsel claims are analyzed under the well-settled requirements set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687, 104 S. Ct. at 2064.

For the first requirement, the proper measure of attorney performance is "simply reasonableness under prevailing professional norms." *Id.* at 688, 104 S. Ct. at 2065. In deciding whether counsel's performance was deficient, the Court applies a standard of objective reasonableness, keeping in mind that judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 686-89, 104 S. Ct. at 2064-65. "[A] fair assessment of attorney performance

requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689, 104 S. Ct. at 2065. Indeed, the Supreme Court has established that counsel should be "'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,'" and cautioned against an "'intrusive post-trial inquiry into attorney performance'" and the "'tempt[ation] for a defendant to second-guess counsel's assistance after conviction or adverse sentence.'" *Cullen v. Pinholster*, – U.S. –, 131 S. Ct. 1388, 1403 (2011) (quoting *Strickland*, 466 U.S. at 688-90, 104 S. Ct. at 2065-66).

For the second requirement, the question is whether there is a reasonable probability that, absent the alleged error, the result of the proceeding would have been different, a question that must be considered in the context of the entire evidence. *Strickland*, 466 U.S. at 694-95, 104 S. Ct. at 2068-69. A reasonable probability is "'a probability sufficient to undermine confidence in the outcome,'" *Cullen*, 131 S. Ct at 1403 (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068), which requires a "'substantial,' not just 'conceivable,' likelihood of a different result," *id.* (quoting *Harrington*, 131 S. Ct. at 791).

Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a substantial likelihood that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Cullen*, 131 S. Ct. at 1403. Because a convicted defendant must satisfy both *Strickland* requirements to demonstrate ineffective assistance, a failure to establish either deficient performance

or prejudice makes it unnecessary to consider the other requirement. 466 U.S. at 697, 104 S. Ct. at 2069; *Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992).

As discussed below, Weeks's ineffective-assistance claims fail to satisfy *Strickland*'s prerequisites.

### 1. *Franks* Motion

Neither arguing the *Franks* motion before a judge who had allegedly already determined the merits of the motion, nor submitting the motion to the trial court only once could be considered professional error. Argument is an opportunity to persuade a court of the correctness of a position, *see, e.g., Boyd v. Metro. Life Ins. Co.,* 636 F.3d 138, 144 (4th Cir. 2011) (noting "convincing" argument offered at oral argument hearing), and nothing in the record suggests that electing to argue the motion could be viewed as inconsistent with professional norms.[6] Reurging the motion to a new judge was similarly not supported by professional norms. Trial counsel had already litigated the *Franks* motion in a pretrial hearing, it had been fully heard, and the trial court had rejected the motion. 2 R.R. at 7-42. Weeks's trial attorney did attempt to present the witnesses in support of the same issue during trial, but following prosecution objection, the trial court precluded the witnesses. 5 R.R. at 148-53. The failure to reurge the rejected motion did not cause counsel's performance to fall below an objective level of reasonableness.

In addition to failing to show deficient performance under *Strickland*, Weeks fails to demonstrate a reasonable probability that, but for counsel's failure to not participate in argument on the motion or to reurge the motion, the outcome of his trial would have been different. Weeks does

---

[6] In addition, as already noted, no factual basis for Weeks's complaint appears in the record. *See supra* II.C.

not show that the state court's decision was an unreasonable application of the clearly established federal law of *Strickland*, or was contrary to that established law. Accordingly, 28 U.S.C. § 2254(d) bars habeas relief on this claim.

## 2. Not Challenging Scope of Vehicle Search

The lack of a challenge by trial counsel to the constitutionality of the vehicle search as exceeding the scope of a permissible search incident to arrest did not demonstrate a deficiency or prejudice under *Strickland*.

Weeks relies on *Arizona v. Gant*, – U.S. –, 129 S. Ct. 1710 (2009), to contend that his trial counsel should have challenged the search of the vehicle incident to arrest and argued that the search was unconstitutional because Weeks was handcuffed and in the back seat of a police car at the time of the search. Pet. Attach. at 8. Weeks's contention, however, relies on the sort of hindsight forbidden by *Strickland*.

In *New York v. Belton*, the Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." 453 U.S. 454, 460, 101 S. Ct. 2860, 2864 (1981) (brackets omitted). As the Supreme Court has explained, *Belton* was "widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there [was] no possibility the arrestee could gain access to the vehicle at the time of the search." *Gant*, 129 S.Ct. at 1718. In 2009, in *Gant*, the Court rejected that prevailing reading of *Belton*: "We now know that articles inside the passenger compartment are rarely within the area into which an arrestee might reach, and blind adherence to *Belton*'s faulty assumption would authorize myriad unconstitutional searches."

129 S.Ct. at 1723 (quotation and citation omitted). The Court replaced the prevailing interpretation of *Belton* with the following rule: "Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.*

Although the Supreme Court did indeed alter the governing rule in this area, in light of the state of the law at the time of Weeks's trial, his counsel acted reasonably in not making the argument suggested by Weeks.[7] Her failure to make the *Gant* challenge now suggested cannot support an ineffective assistance claim. *See Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065 (precluding hindsight and second-guessing in evaluating ineffective assistance claims). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S. Ct. 2574, 2586 (1986) (citing *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065).

Moreover, the state habeas court's rejection of this claim is a reasonable application of clearly established federal law, even if the *Gant* decision were also considered. *Gant* recognized that a vehicle search satisfies the Fourth Amendment when it is reasonable to believe that the vehicle contains evidence. *See Gant*, 129 S. Ct. at 1723. "If there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross*, 456 U.S. 798, 820-21, 102 S.Ct. 2157 (1982), authorizes a search of any area of the vehicle in which the evidence might be found." *Id.* at

---

[7] Weeks's case was pending on direct appeal to the Third Court of Appeals of Texas when *Gant* was decided. *See Gant,* 129 S. Ct. at 1710 (decided on Apr. 21, 2009); *Weeks*, 2009 WL 1896066, at *1 (decided on July 1, 2009).

1721; *see also Thornton v. United States*, 541 U.S. 615, 632, 124 S. Ct. 2127, 2137-38 (2004) (Scalia, J., concurring) ("[Because] petitioner was lawfully arrested for a drug offense[,] [i]t was reasonable for [the arresting officer] to believe that further contraband or similar evidence relevant to the crime for which he had been arrested might be found in the vehicle from which he had just alighted and which was still within his vicinity at the time of arrest."); *Gant*, 129 S. Ct. at 1721 (concluding that searches deemed reasonable by Justice Scalia's concurrence in *Thornton* are reasonable for purposes of the Fourth Amendment). Prior to the search of the vehicle, a small bag of cocaine had already been located on Weeks's person. Because a friend of Weeks had come to pick up the vehicle, the officer had reason to be concerned about the possible destruction or disposal of evidence in the vehicle. *See* 4 R.R. at 101; *see also Gant*, 129 S. Ct. at 1721 ("there may be still other circumstances in which safety or evidentiary interests would justify a search"). For these reasons, even with the hindsight of *Gant*, it would be a reasonable application of clearly established federal law for the state habeas court to determine that the absence of a challenge by trial counsel to the scope of the vehicle search did not represent deficient performance.

Weeks's claim also fails because the prejudice requirement under *Strickland* is not satisfied. Weeks has not shown a reasonable probability that the Fourth Amendment challenge would have been successful and the verdict would have been different absent the challenge. *See Kimmelman,* 477 U.S. at 375, 106 S. Ct. at 2582-83 (explaining that when ineffective assistance claim is premised on a failure to competently litigate a Fourth Amendment claim, in order to demonstrate prejudice, the petitioner must demonstrate that his Fourth Amendment claim is meritorious and a reasonable probability that the verdict would have been different absent the excludable evidence). Indeed, as

explained, under *Belton*, the search would have been held to be valid; even if *Gant* had been decided prior to Weeks's trial, it does not suggest success on the motion.[8]

For these reasons, Weeks does not demonstrate that the absence of a challenge by trial counsel to the scope of the vehicle search represented deficient performance or constituted prejudice. As a result, Weeks fails to show that the state court's decision was an unreasonable application of the clearly established federal law of *Strickland*, or was contrary to that established law. Accordingly, 28 U.S.C. § 2254(d) bars habeas relief on this claim.

### 3. Jury Instruction Request

The lack of a request for a jury instruction regarding the legality of the arrest warrant or whether the vehicle search exceeded the scope of a search incident to arrest did not represent a deficiency on the part of trial counsel because neither issue was ever presented to the jury.

A defendant is entitled to an article 38.23 instruction if the trial evidence raised a factual dispute regarding whether evidence presented to the jury was obtained in violation of federal or state law. *See* TEX. CRIM. PROC. art. 38.23; *Goodwin v. Johnson*, 132 F.3d 162, 171 (5th Cir. 1997);

---

[8] Weeks's ineffective assistance claim on this point fails for yet another reason as well. As explained, at the time of this trial in 2008, police officers were generally entitled to search a vehicle's passenger compartment incident to an arrest. *See Belton*, 453 U.S. at 460, 101 S. Ct. at 2864. In *United States v. Jackson*, the Fifth Circuit held that the good-faith exception recognized by *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984), applies to a search that was legal at the time it was conducted but has been rendered illegal by an intervening change in the law. 825 F.2d 853, 866 (5th Cir. 1987) (*en banc*). The good-faith exception to the exclusionary rule provides that evidence obtained from an unconstitutional search need not be suppressed "when the offending officers acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." *Leon*, 468 U.S. at 918, 104 S. Ct. at 3418. In considering the effect of *Gant* on pending cases, the Fifth Circuit relied on *Jackson*'s good faith exception and held in *United States v. Curtis*, 635 F.3d 704, 713-14 (5th Cir. 2011), that the rule announced in *Gant* did not justify suppressing evidence recovered in searches that took place before the date on which *Gant* was decided.

*Thomas v. State*, 723 S.W.2d 696, 707 (Tex. Crim. App. 1986). An article 38.23 instruction directs a jury to disregard the evidence at issue if the jury resolves the factual dispute in a defendant's favor. *Id.* In this case, evidence concerning the validity of the municipal warrant was never presented to the jury. Instead, testimony regarding the warrant was presented in hearings outside the jury's presence. *See* 2 R.R. at 7-42 (pretrial *Franks* hearing); 5 R.R. at 148-52 (hearing concerning motion to dismiss). No instruction related to the scope of the search incident to arrest was warranted because trial counsel did not challenge the admissibility of the evidence on that basis. *See supra* II.E.2.

Because no factual issue concerning the constitutionality of the warrant or the scope of the search was presented to the jury, trial counsel's performance in this regard was not deficient or prejudicial. Weeks fails to demonstrate that the state court's rejection of this claim was an unreasonable application of the clearly established federal law of *Strickland*, or was contrary to that established law. Under 28 U.S.C. § 2254(d), habeas relief on this claim is not available.

### 4. Trial Counsel Strategy

Trial counsel's strategy that essentially presented Weeks as a drug addict and admitted possession of a controlled substance was a reasonable trial strategy and cannot substantiate an ineffective assistance claim. Trial counsel's strategy was to persuade the jury that there was an invalid stop and search, and if that was unsuccessful, to essentially admit that Weeks was a small-time drug user in an attempt to have the jury convict of the lesser included offense of possession instead of intent to deliver a controlled substance. *See* 5 R.R. at 172-83. Given the overwhelming evidence supporting the conclusion that Weeks was in possession of cocaine and the fact that counsel succeeded in obtaining an acquittal on the more serious delivery offense despite Weeks's possession

of scales and numerous plastic bags associated with dealing drugs, this strategy appears reasonable. Weeks does not offer any reasons why this strategy was unreasonable under the norms of professional judgment.

The state court's rejection of this claim was not an unreasonable application of the clearly established federal law of *Strickland*, or contrary to that established law. Under 28 U.S.C. § 2254(d), habeas relief on this claim is not available.

### 5. Alleged Ignorance of Applicable Law

Weeks's allegation that his trial counsel was ignorant of applicable law fails to include any demonstration of specific deficiency or prejudice, and as such, cannot support a claim of ineffective assistance. Weeks cites two pages of the trial transcript which include defense counsel's argument against a prosecution objection to defense witness testimony regarding character and asserts that trial counsel "displayed ignorance of the penal law applicable to the case which allowed the introduction of prejudicial evidence." *See* Pet. Attach. at 7 (citing 5 R.R. at 61-62); *see also id.* at 10 (citing 5 R.R. at 80-81, 116, 149 with regard to a separate claim). But that portion of the trial fails to show that Week's attorney was unaware of the applicable law, nor is there an indication of such elsewhere in the record. Weeks fails to demonstrate that trial counsel acted deficiently or prejudicially. *See, e.g., Ross v. Estelle*, 694 F. 2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."). The state court's decision on this claim was not an unreasonable or contrary application of the law of *Strickland*, and habeas relief is barred in this Court. *See* 28 U.S.C. § 2254(d).

### 6.     State Action as Cause of Ineffective Assistance

Weeks contends that trial counsel could not represent him effectively because the State prevented her from doing so.  Pet. Attach. at 9.  Specifically, he argues that the trial judge's rulings precluded success on the *Franks* motion and in presenting defense witnesses, and allowed defense counsel to have a license to practice law despite supposed ignorance of the law.  *Id.*  Adverse trial court rulings or licensing of an attorney do not satisfy *Strickland*'s requirements to show professional error on the part of the defense attorney and prejudice to the defendant's case.  *See* 466 U.S. at 687, 104 S. Ct. at 2064.  The state court's decision was not an unreasonable or contrary application of the law of *Strickland*, and habeas relief is not available in this Court.  *See* 28 U.S.C. § 2254(d).

### F.     Ineffective Assistance of Appellate Counsel (Claims 11, 12)

Weeks asserts that he was denied effective assistance of counsel on appeal because: (1) his counsel did not present the claims discussed above (Claims 1-10), Pet. Attach. at 10-11 (Claim 11)); and (2) state action deprived his appellate counsel of a copy of the transcript of the *Franks* hearing by not making it a part of the appellate record, thereby preventing his appellate counsel from investigating and advancing issues on appeal related to the *Franks* hearing, Pet. Attach. at 11-12 (Claim 12).  The Director counters as follows: (1) Weeks does not satisfy the standards for ineffective appellate counsel because he does not show that appellate counsel did anything but focus on the best arguments, and he fails to show the necessary prejudice resulting from the decision not to raise the arguments identified by Weeks; and (2) the record did include a copy of the *Franks* hearing transcript. Answer at 29-31.

To succeed on an ineffective-assistance-of-counsel-on-appeal claim, Weeks must satisfy the two standards set out in *Strickland*. *See Smith v. Robbins*, 528 U.S. 259, 286, 120 S. Ct. 746, 764 (2000). A petitioner must demonstrate that appellate counsel was deficient, and that the deficiency prejudiced his appeal. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. To demonstrate deficiency on the part of counsel, a petitioner must show that counsel "fail[ed] to find arguable issues to appeal–that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Smith*, 528 U.S. at 286, 120 S. Ct. at 764. Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Id.* at 288, 120 S. Ct. at 764 (citing *Jones v. Barnes*, 463 U.S. 745, 103 S. Ct. 3308 (1983)). Thus, it is possible that an ineffectiveness claim may be "based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." *Id.* (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). To demonstrate that a failure to raise an issue was deficient, a petitioner must show that a particular nonfrivolous issue was clearly stronger than issues that counsel did present. *Id.* Additionally, an appellate counsel's failure to raise particular issues on appeal does not deprive an appellant of the effective assistance of counsel when the petitioner did not show the existence of any trial errors with arguable merit. *Hooks v. Roberts*, 480 F.2d 1196, 1198 (5th Cir. 1973).

Under the second *Strickland* prerequisite, appellate counsel is ineffective when counsel's errors are prejudicial, that is, when there is a reasonable probability that but for the error, the ultimate result would have been different. To demonstrate prejudice, a petitioner must show that, but for appellate

counsel's deficient performance, he would have prevailed on appeal. *Smith*, 528 U.S. at 286, 120 S. Ct. at 764.

### 1. Not Raising Claims on Appeal

Weeks's claim fails because it does not satisfy either *Strickland* requirement. Appellate counsel is not required to raise every conceivable argument urged by his client on appeal, regardless of merit. *Smith v. Robbins*, 528 U.S. at 288, 120 S. Ct. at 764. It is appellate counsel's duty to assess and choose among potential issues, according to his or her professional judgment of their merits and the strategic approach being taken. *Jones*, 463 U.S. 745 at 751-52, 103 S. Ct. at 3312-13. There is no indication that Weeks's appellate attorney was doing anything other than eliminating meritless arguments and focusing on the arguments with the most potential for success. *See* Appellant's Br. at 8, *Weeks v. State*, No. 03-08-00359-CR (Tex. App.–Austin Dec. 11, 2008); *see also Ex parte Weeks*, Application No. 74,679, at 66 (explanation by appellate counsel to Weeks why she did not raise challenge presented by the legal research that he forwarded to her: "[i]t is still my professional opinion that a point of error regarding the officer's probable cause to stop would have no success in the appellate court. For that reason, I will not be amending the brief. As your attorney, it is my job to make the strategic and legal decisions as to which points of error to raise.").

Weeks also fails to show the requisite prejudice. The arguments that he asserts should have been included in his direct appeal lack merit, *see supra* II.A-E, and prejudice cannot be demonstrated by a failure to raise meritless issues on appeal. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have

been different had the attorney raised the issue."); *Williams v. Collins*, 16 F.3d 626, 634-35 (5th Cir. 1994) (when issue is without merit, failure to raise issue on appeal cannot satisfy *Strickland*'s prejudice requirement). Weeks fails to show that but for his appellate counsel's failure to raise the claims at issue, he would have prevailed on appeal.

Because Weeks does not demonstrate that the state court's rejection of his claim of ineffective assistance of appellate counsel was an unreasonable or contrary application of clearly established federal law, his claim should be denied. *See* 28 U.S.C. § 2254(d).

### 2.    Transcript of *Franks* Hearing

Weeks's complaint that the transcript of the *Franks* hearing is missing from the record is not borne out by an examination of the state-court record. A copy of the court reporter's transcript of the *Franks* hearing does appear in the state-court record. *See* 2 R.R. at 7-42. Moreover, Weeks's complaint blames "state action" and does not assert a professional error on the part of appellate counsel. *See* Pet. Attach. at 11. For these reasons, no deficiency on the part of counsel or resulting prejudice has been demonstrated, and this ineffective assistance claim must also fail. The state court did not make a an unreasonable determination of the facts in light of the evidence presented in the state court, nor did its decision involve an unreasonable application of the established law of *Strickland*, or one contrary to that established law. Habeas relief is not available for this claim. *See* 28 U.S.C. § 2254(d).

### RECOMMENDATION

It is recommended that Weeks's application for writ of habeas corpus be denied.

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In cases in which a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

Reasonable jurists could not debate the dismissal or denial of Weeks's Section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed.  *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

**OBJECTIONS**

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall also bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 14th day of June, 2011.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE